IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
_____

DAVID SCHLEMM,

      Plaintiff,                                OPINION and ORDER

      v.                                      11-cv-272-wmc

EDWARD WALL,

      Defendant.

_____

The two questions remaining in this case are whether the state is violating *pro se* plaintiff David Schlemm's claimed rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"): (1) to serve venison during the annual Native American Ghost Feast; and (2) to wear a multicolored headband or bandana while praying or meditating in his cell and during group religious ceremonies. *See Schlemm v. Wall*, 784 F.3d 362 (7th Cir. Apr. 21, 2015). Through his then recruited, *pro bono* counsel, plaintiff filed a motion for partial summary judgment with respect to two elements of his RLUIPA claims: (1) whether his requests for these religious accommodations are motivated by a "sincere religious belief"; and (2) whether the Department of Corrections' denial of those requests "substantially burdens" his religious exercise. (Dkt. #125.)[1]

_____

[1] Plaintiff's motion for partial summary judgment was filed by counsel recruited by the court. That counsel has since been granted leave to withdraw due to fundamental disagreements over how to proceed. Now again proceeding *pro se*, plaintiff filed a reply brief and supporting materials on his own behalf. Although plaintiff did not follow the court's summary judgment procedures by responding directly in writing to defendant's proposed findings of fact or by authenticating his evidence, the court has considered all of plaintiff's submissions. Plaintiff should be aware that at

Because there are disputed issues of material fact that preclude summary judgment on both of these elements of his claims, Schlemm's motion will be denied. Accordingly, the trial will therefore, proceed as scheduled on March 21, 2016, to resolve disputed material facts as to whether: (1) Schlemm's requests for religious accommodation are motivated by sincerely held religious beliefs; (2) the DOC's current policies allowing plaintiff to purchase a shelf-stable ceremonial food for the Ghost Feast substantially burden his religious exercise; (3) the DOC's current policies allowing plaintiff to possess a multicolored bandana, not containing red, substantially burden his religious exercise; and (4) whether the DOC's policies are the least restrictive means of furthering a compelling government interest.

## BACKGROUND

Plaintiff filed this suit on April 18, 2011, claiming that various prison policies substantially burdened his right to practice his Native American religious beliefs in violation of the First Amendment's Free Exercise Clause and RLUIPA. Several of plaintiff's claims were dismissed at the screening stage for failure to state a claim upon which relief may be granted (dkt. #3), and others were dismissed at summary judgment because plaintiff had failed to exhaust his administrative remedies (dkt. #79). This court also granted summary judgment to defendants on the merits of plaintiff's two remaining Free Exercise and RLUIPA claims regarding his use of game meat and a multicolored headband, concluding that plaintiff had not shown that his religious exercise had been

trial, however, the court will only consider non-hearsay evidence that has been properly authenticated and not otherwise subject to a valid objection under the Federal Rules of Evidence.

substantially burdened.  Finally, this court found that defendants had shown that the prison's denial of these requests was motivated by compelling government interests, including food safety, accessibility and cost concerns relating to game meat, and security concerns relating to the multicolored headband.  (*Id.* at 21-27.)

On appeal, the Seventh Circuit affirmed dismissal of the unexhausted claims, but reversed dismissal of plaintiff's RLUIPA claims for injunctive relief.  *Schlemm*, 784 F.3d at 366-67.  The Seventh Circuit explained that the Supreme Court had recently interpreted the "substantial burden" prong of a RLUIPA claim as being "a standard much easier [for a plaintiff] to satisfy" than the standard previously articulated by the Seventh Circuit and applied by this court.  *Id.* at 364.  Additionally, the Seventh Circuit found that the defendants had not shown that the prison regulations were the least restrictive means to further a compelling government interest.

With respect to plaintiff's request for game meat in particular, the Seventh Circuit found that there was insufficient evidence in the record to support the prison's express concerns about the cost, safety and feasibility of providing game meat, particularly where plaintiff had "offer[ed] to secure a sealed platter of acceptable game meat from an outside vendor."  *Id.* at 363.  The Seventh Circuit was almost as skeptical that the prison's purported desire to reduce gang identification was a sufficiently "compelling" interest to support a ban on colored headgear, particularly where the plaintiff "propos[ed] to wear a headband with earth tones (such as blues and greens) that no one would understand as gang-related."  *Id.* at 366.  The Seventh Circuit, therefore, directed that this court issue a preliminary injunction "entitling Schlemm to wear a headband in his cell and during

3

religious ceremonies (provided that the headband does not contain any red), and have a supply of venison for the Ghost Feast." *Id.*


DEVELOPMENTS AFTER REMAND

I.      **Compliance with the Preliminary Injunction**

After remand, this court issued a preliminary injunction as directed by the Seventh Circuit. The court also recruited counsel for plaintiff. Counsel for both sides then acted to ensure compliance with the preliminary injunction. With respect to the headband, Schlemm was allowed to choose a headband from "Colleen's Gardens," which was the vendor Schlemm identified as providing an acceptable headband. Schlemm selected a bandana containing the colors turquoise, black and white. He received the bandana in July 2015 and has been permitted to wear it in his cell, during weekly Pipe and Drum study groups, and during monthly sweat lodge ceremonies.

Although DOC has not changed the policy prohibiting colored religious headgear, it did offer to let Schlemm keep the bandana to meet his future religious needs. Schlemm rejected that offer on the grounds that because the bandana does not contain the color red, it does not meet his religious needs.

With respect to Schlemm's request for venison, DOC notified plaintiff sometime in August that the annual Ghost Feast would be held on September 23, 2015. Based on communications between counsel, it appears that neither plaintiff nor defendant could locate a commercial vendor in the Green Bay area that served venison Indian tacos. (Dkt. #143, Exh. 1018, 1019.)   Still, defendant's counsel suggested several online

4

commercial vendors that sold other preparations of venison, as well as local restaurants that had menu items containing venison, and asked Schlemm to identify which venison option would fulfill his religious needs for the Ghost Feast.  (*Id.* at 1018-001.)

A further obstacle emerged, however, when defendant told Schlemm that *he* would be responsible for paying for any special food items chosen.  Taking the position that because the prison would be providing the same meal tray to Schlemm as other inmates at the Ghost Feast, defendant maintained that any special items would not be a "meal replacement," and, therefore, neither the injunction nor RLUIPA required the state to pay for plaintiff's religious foods.  (*Id.* at 1018-006.)

Ultimately, plaintiff requested that he be permitted to order:  (1) a jerky combo including venison, elk and buffalo jerky from Cabela's online website, for $65.94; (2) a beef Indian Taco from a local restaurant, Frybread Heaven, for $6.75; and (3) a venison Sloppy Joe from another local restaurant, the 1919 Kitchen and Tap, for $19.00.  The jerky arrived at GBCI before the Ghost Feast, and the venison sloppy joe and Indian Taco were scheduled to be delivered on the date of the feast.  The total cost for the food would have been $91.69, plus tax and additional delivery charges for the restaurant food.[2]  Just four days before the Ghost Feast on September 19, 2015, however, plaintiff removed himself from the attendance list and informed GBCI staff that he was not going to be present at the feast.  Plaintiff apparently took the position that the scheduled feast would not be a proper Ghost Feast unless it:  (1) was held in October or November, not

---

[2] According to communication between counsel, plaintiff's counsel intended to pay for the cost of the food items and delivery charges.

September; (2) included a Sweat Lodge, tobacco burning and spiritual songs; and (3) included foods more traditional than those being offered.  (Dkt. #161-5.)

## II.    DAI Revises the Policy Relating to Annual Religious Celebratory Meals

Under the DAI's "Religious Diets" policy in effect when this case was filed, each umbrella religious group was permitted to hold an annual congregate celebratory meal. The food for the annual feast was taken from the regular institution menu, though inmates could request that a particular meal from the regular weekly menu be served on the day of the event.  Even though the DOC was prohibited from purchasing, preparing or subsiding ceremonial foods, an institution's food service staff and its chaplain frequently collaborated to swap the weekly menu so that the regular meal served on the day of the event would include foods that somewhat resemble traditional goods consumed during that particular celebratory feast.  Under this policy, the institution usually offered beef stew or brisket during the annual Ghost Feast celebration, but did not offer venison because game meat is not part of the regular institution menu.

After the preliminary injunction was entered in this case in May of 2015, DOC received numerous inquiries from inmates about the case and about whether all inmates were entitled to receive special foods at the annual religious celebratory meals.  (Dkt. #127-1 at 6) (requests from Jewish inmates for Seder ritual items provided at DOC expense; requests from Native American inmates at multiple prisons for venison, fry bread and/or wild rice for each attendee of the annual Ghost Feast; requests from Islamic inmates for lamb or fried chicken prepared in the prison kitchen for Eid-Al-Fitr

observance; request from Pagan inmates for pork, venison or goat meat at Samhain observance).

In response, the DAI implemented a new version of DAI Policy 309.61.03, "Religious Diets."   Effective January 1, 2016, DOC continues to provide inmates attending an annual, celebratory religious meal with the regular meal tray served to the entire institution that day.   Under the new policy, however, inmates may also request "individual accommodation to purchase an individual portion of a shelf-stable ceremonial food item for personal consumption" in conjunction with a religious group's feast.   The new policy states in pertinent part:

[I]n conjunction with the URG Annual Religious Celebratory Congregate Meal.

1.   Inmates shall submit a DOC-2075 at least 90-days in advance of the event date, and shall include the following details:

   a.   Specific ceremonial food item requested.
   b.   Religious/spiritual/ceremonial significance
   c.   Source of food item from a commercial food vendor.
   d.   Individual portion cost.
   e.   Delivery method and charges.
   f.   Possible substitutions if preferred foods are not approved or are unavailable.

2.   Ceremonial food item shall serve the purpose of addressing the inmate's individual sincerely held religious belief and consumption is a required component of participation/completion of the specific religious observance event.

   a.   Ceremonial food item shall be prepared, cooked, packaged and delivered by a non-DOC, commercial food vendor.
   b.   DAI is not liable for any food-borne illness which may result from consumption of ceremonial foods from commercial food vendors.
   c.   Exact replication of typical community practices may not be possible due to limitations of facility security procedures,

7

food storage capacity, preparation requirements, event time/space, etc.

d.   Inmate may be asked to offer a least restrictive alternative if facility is unable to accommodate requested item.

3.   Upon receiving approval of DOC-2075 request to purchase ceremonial food item, inmate shall initiate the DOC-184 and order product within five business days.

a.   Inmate shall have sufficient funds in their account at the time of the order.

b.   DOC-2075 approval for purchase of ceremonial food item becomes null and void if inmate submits DOC-184 after the five-day deadline or has insufficient funds for purchase and delivery costs.

c.   DAI facilities are not responsible for inmate submissions of DOC-2075 or DOC-184s too late for timely delivery.

d.   DAI facilities are not responsible for vendor/delivery delays which result in the ceremonial food item being unavailable on the date of the URG event.

4.   After processing through the mail/property room per DAI Policy 309.20.03, ceremonial food items for individual inmates (purchasers) shall be delivered to the Chaplain/designee for appropriate distribution:

a.   DAI facilities shall store shelf-stable ceremonial food items for individual inmates (purchasers) until the appropriate date/time of the URG event.

b.   DAI facilities are not responsible to provide specialized food storage or preparation (e.g., refrigeration; heating/warming; serving utensils/dishes).

c.   Chaplain/designee shall distribute ceremonial food items to individual inmates (purchasers) at the URG event site.

5.   Inmates shall adhere to Wisconsin Administrative Code Ch. 303, which prohibits donating/providing/sharing ceremonial foods with other event attendees.

6.   All ceremonial food items shall be consumed by individual inmates (purchasers) or disposed of at the conclusion of the event.

This new policy does not appear to affect existing DAI policies permitting consumables for certain congregate religious services, including Jewish Seder plates, Native American Spirit Foods, and Protestant sacramental wine/beverage and sacramental bread/wafer.  Under current policies, religious foods are allowed for certain enumerated services, so long as the food is vendor-sealed, in clear-plastic packages, and brought in by the religious group's spiritual advisor.  DOC does not pay for religious foods for any religious ceremonies.

## III.    Professor Deward E. Walker's Expert Report.

Through his then counsel, plaintiff retained Deward E. Walker, a professor of anthropology and ethnic studies at the University of Colorado, Boulder, to offer opinions on the American Indian traditions of the Ghost Feast and wearing of colored headbands. (Dkt. #121.)   Walker's report includes historical accounts of Ghost Feasts held by various American Indian tribes and describes the meaning of Ghost Feast traditions.  He further opines that traditional foods, such as venison, are an important aspect of the Ghost Feast.  (*Id.* at 4-12.)   He also discusses the tradition of American Indian headbands, describing the symbolism of the headband, as well as its use and function in American Indian ceremonies.

Walker concludes with the following opinions:

- David A. Schlemm is a sincere, traditional American Indian practitioner of the Ghost Feast Ceremony as part of his personal religious life.

- The Ghost Feast is a widespread traditional ceremony honoring deceased American Indian ancestors usually conducted in the fall of the year.

- The Ghost Feast requires special foods, special headgear, ceremonial songs, and other ceremonial requirements.

- The headband is part of traditional American Indian religious practice.

- Typically the Ghost Feast is overseen by a spiritual leader or specialist but such individual is not always necessary for the performance.

- Based on my interviews with Mr. Schlemm, I believe that he has always practiced the Ghost Feast and that his family instructed him on the Ghost Feast beginning as a young child.

- Mr. Schlemm is enrolled as a Navajo, but has led an intertribal life in which he has associated with various other tribes in Wisconsin and elsewhere in the United States who practice the Ghost Feast and other non-Navajo ceremonies he has adopted as his own.

- Mr. Schlemm's practice of various intertribal ceremonies is consistent with my fifty years of research among tribes of the United States and Canada.

- It is my experience from the numerous prison research projects I have conducted on behalf of American Indian prisoners that the opportunity to practice their traditional ceremonies leads to a more satisfactory adjustment to prison life and ultimate rehabilitation.  In fact, various American Indians have learned about their traditions in prison for the first time and have become sincere traditionalists with a very successful rehabilitation rate and readjustment to life inside and outside of prison.  I have witnessed this in Colorado, South Dakota, Oregon, California, Idaho, Utah, Oklahoma, Montana and Alabama on multiple occasions in which the[ir] observations are held.

(*Id.* at 17-18.)

OPINION

RLUIPA prohibits the government from imposing "a substantial burden on the religious exercise of a person residing in or confined to an institution," unless "that imposition of the burden on that person: (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling

10

governmental interest." 42 U.S.C. § 2000cc-1(a).  RLUIPA protects "any exercise of religion, whether or not compelled by, or central to, a system of religious belief," § 2000cc–5(7)(A), but "a prisoner's request for an accommodation must be sincerely based on a religious belief and not some other motivation."  *Holt v. Hobbs*, 135 S. Ct. 853, 862 (2015) (citing *Burwell v. Hobby Lobby*, 134 S. Ct. 2751, 2774, n. 28 (2014)).

In applying this statute, courts have placed the initial burden on the plaintiff to show that he has a sincere religious belief and that his religious exercise was substantially burdened.  *Holt*, 135 S. Ct. at 862; *Koger v. Bryan*, 523 F.3d 789, 797-98 (7th Cir. 2008); *Vision Church v. Village of Long Grove*, 468 F.3d 975, 996-97 (7th Cir. 2006).  If the plaintiff is able to meet this threshold, the burden then shifts to the defendants to demonstrate that their actions further "a compelling governmental interest" by "the least restrictive means." *Cutter v. Wilkinson*, 544 U.S. 709, 712 (2005).  In this case, plaintiff moved for summary judgment on the two elements for which he has the initial burden: (1) whether his requests are motivated by sincere religious beliefs; and (2) whether his religious exercise has been substantially burdened.  For the reasons set forth below, the court finds that a trial is required before either element can be resolved.

## II.    Sincerity of Plaintiff's Religious Beliefs.

For purposes of the earlier summary judgment proceedings in this case, the state chose not to dispute the sincerity of plaintiff's religious beliefs.  *Schlemm*, 784 F.3d at 363 (noting that state had not contested the sincerity of plaintiff's request for venison).  On remand, however, defendant has questioned whether plaintiff's requests for venison and

for a multicolored headband are indeed motivated by sincere religious beliefs, which is their right.  RLUIPA is a "guarantor of sincerely held religious beliefs" only.  *Koger,* 523 F.3d at 797.  *See Cutter*, 544 U.S. at 725 (RLUIPA permits "inquiry into the sincerity of a prisoner's profession of religiosity"); *Haight v. Thompson*, 763 F.3d 554, 565 (6th Cir. 2014) ("To the extent the prison officials think that the three inmates are . . . making it up when it comes to their belief that these food items are imperatives for a powwow, they should feel free to challenge that sincerity.")  A review of the parties' arguments and the evidence presented thus far on remand makes clear that this issue cannot be resolved on summary judgment.

### A.    Plaintiff's Request for Venison Indian Tacos.

The state concedes that:  (1) the Ghost Feast is important to many practitioners of Native American religious traditions; and (2) traditional foods are frequently consumed during the Ghost Feast as a way to honor ancestors and celebrate the harvest season.  Of course, the relevant question in this case is neither whether *many* or even *most* American Indians believe the Ghost Feast is a necessary element of their religious practice, nor whether traditional foods are essential to the Ghost Feast.  Rather, the relevant question is whether *plaintiff* sincerely holds these religious beliefs, and even more specifically, whether he believes that game meat (in his case, venison) is necessary for a Ghost Feast. *Vinning-El v. Evans*, 657 F.3d 591, 594 (7th Cir. 2011) ("[S]incerity rather than orthodoxy is the touchstone" for RLUIPA purposes).  On this question, there are genuine issues of disputed fact.

For his part, plaintiff points to the statements in Walker's report that "venison and other traditional foods are a part of the Ghost Feast" and that "Indian tacos" and "deer meat" are necessary elements of a Ghost Feast.  (Dkt. #121 at 11.)  He also points to the declarations of other practitioners of Native American traditions who state that traditional foods such Indian tacos with deer meat, should be present because the Ghost Feast is intended to honor ancestors.  (Dkt. ##18-7; 162; 163).  Finally, he points to a document describing the "Community Death Feast" held by the Oneida Tribe, which states, "Generally, the kinds of foods that our ancestors ate are encouraged (corn mush, venison, squash, berries, etc.)"  (Dkt. #161-1.)[3]

In response, however, the defendant is also able to point to statements in Walker's report suggesting that a Ghost Feast does not require any *specific* food, such as venison, but rather that venison meat is just one *possible* type of acceptable "traditional food." (Dkt. #121 at ¶ 20) (describing Ghost Feasts as involving "[d]ozens of dishes –- both traditional and non-traditional -- including a variety of meats, meatballs, pasta, potatoes, breads, salads, cakes, cookies, and pies. . . ."); ¶ 28 (describing a Ghost Feast involving "wild turnips and fruits," with no mention of game meat).  Indeed, one interpretation of Walker's report is that some American Indians may believe that certain traditional foods are essential to a Ghost Feast, while others believe that it is only necessary to have a

---

[3]  Plaintiff should be aware that this document is technically hearsay (that is, inadmissible to support his claims at summary judgment or trial).  To the extent he intends to rely on it at trial as providing an accurate description of Oneida traditions, plaintiff may be able to offer the document through an expert witness, statement in ancient document, in his testimony to explain the basis for his own beliefs regarding the Ghost Feast, assuming he did indeed rely on this document to form his own beliefs, or for other permissible reasons recognized under the Federal Rules of Evidence.

variety of special foods and other ceremonial items designed to honor ancestors and celebrate family and the harvest.  Regardless, Walker's opinions, along with the opinions expressed in the other declarations plaintiff has provided, are certainly relevant to evaluating plaintiff's professed beliefs, but they clearly do not resolve the parties' dispute over the *sincerity* of those beliefs.

Plaintiff also argues that his own testimony regarding the importance to his spiritual practice of traditional foods at a Ghost Feast *confirms* the sincerity of his beliefs. (Pl.'s Br. (dkt. #126) at 10-11; Reply Br. (dkt. #161) at 1).   Here, too, however, defendant has presented contrary evidence which suggests that plaintiff's recent requests for venison tacos are *not* motivated by a sincerely held religious belief that venison is necessary.   Specifically, defendant offers evidence that in 2008 and 2009, Schlemm petitioned the prison to serve Indian tacos made with *ground beef* at the Ghost Feast.  (*See, e.g.*, Dkt. #142-1) (requesting that Ghost Feast menu consist of "Indian Tacos – (ground beef, diced tomatoes, diced onions, shredded lettuce, fry bread, fresh fruit/melons, and fruit pies.)").)  As part of these same requests, Schlemm also acknowledged that the tacos already part of the regular menu at GBCI could accommodate part of his feast food needs.   (Dkt. ##18-6; #142-1.)   While there is no dispute that Schlemm began to request *venison* meat for the tacos starting in 2010, defendant also argues that his decision to skip the 2015 Ghost Feast, despite the accommodations made to ensure he had venison and an Indian taco, suggests plaintiff does not believe the Ghost Feast itself to be as important to his religious practice as he has claimed.

14

Inconsistencies in a plaintiff's professed beliefs may be evidence of insincerity, *Koger*, 523 F.3d at 798, as can beliefs that are "ever-changing." *Lindell v. Casperson*, 360 F. Supp. 2d 932, 952 (W.D. Wis. 2005), *aff'd sub nom. Lindell v. Govier*, 169 F. Appx 999 (7th Cir. 2006). Plaintiff asserts that his 2008 and 2009 ground beef requests are the result of his not yet fully understanding that venison Indian tacos are a necessary component of a Ghost Feast, rather than a basis to question his sincerely held religious beliefs. (Pl.'s Reply Br. (dkt. #161) at 1-2.) Since then, plaintiff reports having obtained documentary evidence that venison tacos are necessary. (*Id.*) With respect to the 2015 Ghost Feast, plaintiff says that the timing and events planned rendered the Ghost Feast meaningless for him, despite the availability of venison.[4]

In the end, the significance of all of this conflicting evidence and argument cannot be adequately weighted without assessing Schlemm's credibility on the witness stand, which is why cases are tried. Accordingly, plaintiff's request for summary judgment on this element of his claim will be denied, and both sides should be prepared to address this issue at trial.

**B.   Plaintiff's Request for a Multicolored Bandana.**

As with the Ghost Feast, the state does not dispute that use of a headband is a sincerely held religious belief by many American Indians. Thus, the state also does not dispute Walker's opinions regarding the symbolic meaning of headbands or their

---

[4] Although plaintiff may discuss his objections to the timing and activities in the context of explaining why he did not attend the 2015 Ghost Feast, he should be aware that he has not allayed RLUIPA claims regarding the timing and activities of the feast in this case. If plaintiff wishes to assert RLUIPA claims on these issues, he must first exhaust his administrative remedies with respect to those claims and then file a new lawsuit.

15

traditional use during religious ceremonies.  The dispute here lies with the sincerity of plaintiff's request for a multicolored headband, and in particular, plaintiff's seemingly inconsistent statements regarding the type of headband necessary to fulfill his religious needs.

During his deposition, plaintiff stated that one red headband would meet his religious needs.  (Dkt. #35 at 46).  He also stated that he would like to possess at least four bandanas of different colors or one multicolored bandana.  (*Id.* at 44-45).  On appeal, the Seventh Circuit stated that plaintiff had agreed to use a "headband with earth tones (such as blues and greens)," but containing no red.  *Schlemm*, 784 F.3d at 366.  In his reply brief on remand, however, plaintiff now says that he *requires* a multicolored bandana or headband that includes red.  (Dkt. #161 at 12-13.)  He further states that "red personally identifies with him" and that "red is his designated color."  (*Id.*) Moreover, plaintiff now rejects the notion that the turquoise, white and black bandana he received can fulfill his religious requirements.   In light of plaintiff's seemingly conflicting statements on this issue, there is no basis to determine as a matter of law that plaintiff's headband requests are motivated by a sincerely held religious belief. Accordingly, plaintiff's motion for summary judgment on this element of his claim is denied as well, and the issue will be resolved at trial.

**III.   Substantial Burden.**

In addition, plaintiff moves for summary judgment on the "substantial burden" element of his RLUIPA claim.  As the Seventh Circuit noted on appeal, the United States

Supreme Court recently defined "substantial burden" as something that "seriously violates [one's] religious beliefs," regardless of whether alternative means of religious exercise are available. *Schlemm*, 784 F.3d at 364-65 (quoting *Holt*, 135 S. Ct. at 862 (quoting *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751, 2775 (2014))). Of course, the term "seriously" provides little more guidance than does the phrase "substantial burden," but the Seventh Circuit advised it means more than just a "modest" violation. *Schlemm*, 784 F.3d at 365. The Seventh Circuit has also explained in other cases that "substantial burden" results when the government "put[s] substantial pressure on an adherent to modify his behavior and violate his beliefs." *Koger*, 523 F.3d at 799 (internal citations and quotation marks omitted). *See also Holt*, 135 S. Ct. at 862 (policy that forces a prisoner to choose between violating his beliefs and facing discipline is a substantial burden).

Even with this guidance, recent developments in this case preclude summary judgment on the "substantial burden" prong of plaintiff's claim. When plaintiff filed this suit, DAI policy prevented Schlemm from obtaining venison or any other traditional foods for the Ghost Feast unless already included on that institution's menu. Under DAI's revised policy, however, inmates may purchase an individual portion of a shelf-stable ceremonial food item for personal consumption in conjunction with a religious group's annual feast. Therefore, plaintiff may now request an individual accommodation for whichever preferred food he would like at the Ghost Feast, including venison, if a shelf stable product is available from a commercial food vendor. Similarly, when plaintiff filed this lawsuit, the state had refused to allow him to wear a multicolored headband in

17

his cell or at religious ceremonies.  Now, however, plaintiff has obtained a multicolored bandana and the state has proposed that he keep it to fulfill his religious needs.

In order to prove that the state continues to "substantially burden" his religious exercise under the revised policy, plaintiff must now show that:  (1) the revised DAI policy on food for religious celebratory meals continues to substantially burden his religious exercise; and (2) the state's refusal to allow him to have different headbands, in addition to the one he already possesses, substantially burdens his religious exercise.[5] Plaintiff has come forward with enough evidence for a reasonable trier of fact to rule in his favor at trial, but his evidence to date is far from definitive.  For example, plaintiff argues in his reply brief that the revised policy concerning religious diets continues to burden his religious exercise substantially by:  (1) requiring him to file a request for an accommodation; (2) failing to resolve the dispute about the correct date for a Ghost Feast; (3) not allowing him to request a venison Indian taco from a Native American caterer; and (4) requiring him to pay for any special food he wishes to order.  (Dkt. #161 at 8-11.)   The court does not need to hear further evidence or argument regarding plaintiff's first two objections.  At least until a custom or practice has developed with respect to a religious practice with an institution, which is certainly not yet true here, requiring plaintiff to file a request for a special food order is not particularly burdensome,

_____

[5] Should plaintiff prevail on either of his RLUIPA claims, his remedy is injunctive relief only. *Nelson v. Miller*, 570 F.3d 868, 886-89 (7th Cir. 2009).  At this point, it is unclear whether plaintiff is seeking, and whether defendant objects to, entry of a permanent injunction with respect to DOC's earlier prohibition on venison and headbands, or whether the parties agree that this relief is moot by virtue of DOC's revised policies (formal, with respect to allowing game meat (venison), and informal, with respect to allowing a single headband).  Accordingly, both sides may have ten (10) days to advise the court as to their position, along with any legal support.

much less a "substantial burden."  Similarly, plaintiff complaint about the date of the Ghost Feast is a distinct claim that, for reasons explained above, is not properly before the court in this case.

Plaintiff's other objections, however, *may* have merit.  If plaintiff can show that he is unable to obtain the game meat imperative to his sincere religious belief and practice under the revised policy, he may be able to prove that his religious exercise is still being substantially burdened.  If plaintiff wishes to pursue this claim at trial, he should be prepared to explain exactly:  (1) what food item he requires to fulfill his religious needs; (2) why he could not obtain the food under the new policy; and (3) how he would obtain the food if the policy did not prohibit it.  In particular, if he sincerely believes that the only way to obtain the required food item is through a Native American caterer, he must submit evidence showing this, as well as evidence that a particular caterer could practically provide the food he seeks in a timely and acceptable manner.  Similarly, if plaintiff sincerely believes the only practical way to obtain venison Indian tacos is through the prison cafeteria, he must say so and state specifically what he believes the prison cafeteria must provide.  Plaintiff should also be prepared to explain why his current position does not contradict the position he took on appeal, where he sought a sealed platter of food from an outside vendor.

Finally, if plaintiff believes that obtaining food under the revised policy would be cost prohibitive, he must submit *specific evidence* documenting that this is so, as well as evidence showing that obtaining the specific food he requires would cost less but for the revised policy.  In other words, plaintiff must show that defendant is the cause of the

unreasonably burdensome cost, and not simply that venison is expensive or difficult to obtain in the Green Bay area.

As for plaintiff's related argument that the DOC should have to pay for his special food items, RLUIPA requires governments to refrain from substantially burdening religion, but it does not require governments to subsidize religion.  *See Cutter*, 544 U.S. at 720 n. 8 ("Directed at obstructions institutional arrangements place on religious observances, RLUIPA does not require a State to pay for an inmate's devotional accessories.") (citing *Charles v. Verhagen*, 348 F.3d 601, 605 (7th Cir. 2003) (overturning prohibition on possession of Islamic prayer oil but left inmate-plaintiff with responsibility for purchasing the oil).  That DOC pays for some religious diets as part of *regular* meal service is not necessarily determinative.  The DOC provides those religious diets as part of its obligation to provide sufficient food to all inmates.  *See, e.g., Moussazadeh v. Texas Dep't of Criminal Justice*, 703 F.3d 781, 793 (5th Cir. 2012), as corrected (Feb. 20, 2013) ("denial of religiously sufficient food where it is a generally available benefit would constitute a substantial burden on the exercise of religion").  In other words, certain religions that regulate diet year round as a fundamental tenant may necessitate accommodation year round and lead to adoption of that diet as cost-effective, regular meals because the alternative is inmates starving or becoming malnourished.

Here, in contrast, plaintiff is seeking a special religious food once a year *in addition* to the regular meals provided by the DOC without any meaningful impact on his health.  Absent evidence that the DOC pays for special religious foods for similar, periodic religious celebrations by inmates, plaintiff would appear to have a difficult time

20

establishing that his religion has been singled out, much less that the requirement that he pay for his food constitutes a substantial burden on his free exercise of religion. Even more broadly, RLUIPA imposes no requirement on DOC to pay for special religious foods, so long as its regulations do not create a substantial burden to plaintiff obtaining the special foods himself. 42 U.S.C. § 2000cc-3(c) ("Nothing in this chapter shall create or preclude a right of . . . any person to receive government funding for a religious activity, but this chapter may require a government to incur expenses in its own operations to avoid imposing a substantial burden on religious exercise.").

With respect to the recent developments affecting plaintiff's claim for a multicolored headband, plaintiff *may* be able to show that having only one headband not containing red seriously violates his religious beliefs unless cost prohibitive, unsafe or other compelling state interest is shown. Plaintiff did not move for summary judgment on that issue, however, as his initial brief seemed to assume that he was willing to accept a headband not containing red. Accordingly, his motion for summary judgment on the "substantial burden" prong will be denied and the parties should also be prepared to address that element of plaintiff's claims at trial.

## III. "Least Restrictive Means" of Furthering a "Compelling Governmental Interest."

Although plaintiff did not move for summary judgment on the state's ability to prove that the restrictions burdening his religious exercise are the least restrictive means of furthering a compelling government interest, the court offers a few remarks on this aspect of plaintiff's claim in order to highlight certain issues that will need to be resolved

21

at trial.   As an initial matter, application of the "compelling government interest" standard requires a careful balance between deference due prison officials and scrutiny required of the courts.   On one hand, the standard Congress chose is "exceptionally demanding" on the government.   *See Holt*, 135 S. Ct. at 864 ("Congress enacted RLUIPA . . . in order to provide very broad protection for religious liberty.").   *Id.* at 859.   On the other hand, the Supreme Court emphasized that "in applying RLUIPA's statutory standard, courts should not blind themselves to the fact that the analysis is conducted in the prison setting." *Id.* at 866.[6]

When reviewing restrictions on religious exercise in prison, therefore, courts must weigh *both* of these competing considerations, without giving too much or too little weight to one over the other.   *Holt*, 135 S. Ct. at 864 ("Prison officials are experts in running prisons and evaluating the likely effects of altering prison rules, and courts should respect that expertise.   But that respect does not justify the abdication of the responsibility, conferred by Congress, to apply RLUIPA's rigorous standard.").

As with the "substantial burden" element of plaintiff's claims, the recent factual developments in this case must be considered in the analysis.   If plaintiff is able to meet the other elements of his RLUIPA claim, including that DAI's revised policy relating to religious celebratory meals continues to substantially burden his religious exercise, the state will then have the burden to prove that the revised policy is the least restrictive

---

[6] In *Cutter v. Wilkinson*, 544 U.S. 709 (2005), the Supreme Court also emphasized the importance of courts giving "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources."  *Id.* at 722-23.

means of furthering a compelling government interest.  If the state intends to rely on the cost, safety or feasibility concerns of preparing or serving venison meat at the prison, it may need to prove *specific* facts supporting those concerns.  In particular, the state should be prepared to respond to plaintiff's arguments that the DOC previously allowed food for Ghost Feasts to be provided by volunteers or Native American caterers and by inmates in the training kitchen at the prison.  The state should also bear in mind the Seventh Circuit's statement in this case that "[s]aving a few dollars is not a compelling interest, nor is a bureaucratic desire to follow the prison system's rules."  *Schlemm*, 784 F.3d at 365.

And with respect to the headband, if plaintiff is able to show that possessing only his current bandana continues to burden his religious exercise substantially, the state will have the burden to prove that limiting plaintiff to a single, earth-hued bandana is the least restrictive means of furthering a compelling government interest.  If the state intends to rely on security concerns regarding gang identification, the state should obviously also be prepared to respond to the skepticism reflected in the Seventh Circuit's opinion remanding this case for trial.  *See Schlemm*, 784 F.3d at 366.  The state should further be prepared to respond to plaintiff's arguments that allowing him to possess a blue headband, but not a multicolored headband containing red, is arbitrary in light of the fact that (1) blue is also a gang-related color, and (2) no inmate would consider a multicolored headband to be a gang symbol.  Finally, the state should be able to explain what security concerns exist if plaintiff is restricted to wearing his headband(s) of whatever color in his cell and at religious ceremonies, as he has repeatedly requested.

ORDER

IT IS ORDERED that:

(1)     plaintiff's motion for summary judgment (dkt. #125) is DENIED;

(2)     both sides may have until March 10, 2016, to advise the court as to their position as to the availability of permanent injunctive relief with respect to DOC's original policies on venison and headbands, including legal support; responses will be due March 17, 2016, with no replies unless ordered by the court; and

(3)     this case shall proceed to a trial before the court on March 21, 2016 to resolve all remaining disputed material factual and legal issue, including whether:  (1) plaintiff's requests for religious accommodation are motivated by sincerely held religious beliefs; (2) the DOC's current policies allowing plaintiff to request a shelf-stable ceremonial food for the Ghost Feast and to possess a multicolored bandana, not containing red, substantially burden his religious exercise; and (3) whether the DOC's policies are the least restrictive means of furthering a compelling government interest.

Entered this 29th day of February, 2016.

BY THE COURT:

/s/

_____

William M. Conley
District Judge

24